## RIDER v. ADAMS et al.

### (Circuit Court, W. D. Pennsylvania. July 3, 1893.)

### No. 22.

PATENTS FOR INVENTIONS—VERTICAL TUBULAR CASTINGS—LIMITATION OF CLAIM
—INFRINGEMENT.

Letters patent No. 159,533, granted February 9, 1875, to Leman P. Rider, for an improvement in casting tubular articles, as first applied for, claimed, (1) in casting tubular articles in vertical molds, the centering of the core by recesses formed in the opposite ends of the mold; (2) the cope formed in one piece with the core, and having pouring gates formed therein, so that in casting tubular articles the pouring may be done through the core. Only the second claim was allowed, omitting the words, "in casting tubular articles," and adding after "so that the pouring may be done through the core" the following words: "Without disturbing the relative position of the cope and mold." Vertical casting of hollow and tubular articles by the use of a core head in one piece with the cope, and adapted to centering it, was known to the prior art. *Held*, that the patent should be limited to a device for pouring in and through the core head of a cope made in one piece with the core head, thereby avoiding the disturbance of the relative position of the core and mold, and was not infringed by a device for making wagon boxes, wherein the core head is formed with the core and a print at the lower end, the cope being seated at the top and bottom of the mold, and the pouring not being done through the cope or core head.

At Law. Action of trespass on the case by Leman P. Rider against S. Jarvis Adams & Co. for infringement of letters patent. A jury trial was waived, and the case tried by the court. Judgment for defendants.

Joseph M. Swearingen, for plaintiff.
James I. Kay, for defendants.

BUFFINGTON, District Judge. On February 9, 1875, a patent (No. 159,533) for an improvement in casting tubular articles was granted to Leman P. Rider, the plaintiff. This action of trespass on the case was brought after the expiration of the patent for alleged infringement by the defendant firm of the first claim of said patent. Trial by jury was duly waived, and the case heard by the court. Two questions are involved, viz. patentability and infringement. The art involved is the casting of circular hollow articles. By the old method these were cast in a horizontal position. The mold was made in two parts; the lower known as the "drag," the upper as the "cope." The drag was first made in sand containing a part of the pattern, and the remaining part in sand in the cope. The "core," made of sand and other ingredients, and which forms the hollow part of the casting, was placed in the mold cavity in the drag horizontally, and secured at either end by core prints. This core, together with its head and base, was made in one piece. Upon the drag the cope was then placed, being directed to position by dowel pins, and secured by clamps. The molten metal was poured through a hole or pouring gate in the cope, and, reaching the mold cavity, formed the casting. One difficulty in the method was the failure of the core to center,—a thing caused by not packing the

sand evenly, by a jarring of the flask, and by the rising of the metal as poured. In the new method the cores are placed vertically in the mold, are kept in engagement with core prints or seats at each end, and the metal poured in from above. In this change, so far as metal casting generally is concerned, Rider was not a pioneer. It may be he was the first to cast axle boxes, but in doing so he drew very largely on the prior art, as shown in the casting of other articles. The art, prior to his application, showed a patent (No. 121,-151) to Brodie and others for casting large iron pipe, in which a vertical metallic flask was used, and a metallic core inserted therein. It was centered at its lower end by engagement with core prints, and "a sand ring, provided with openings, which openings serve the purpose of pouring gates, is then placed over the upper end of the core, so as to fill up the space between the core and mold, and form the end portion of the mold for the bowl of the pipe." This ring formed an integral part of the core when finished, and through it the metal was poured. At McNeal's works, in Burlington, N. J., iron pipes were cast vertically. A large flask was placed in a pit, the pattern put therein and secured to place by a plate at the base, the sand rammed around, and the pattern then withdrawn. A hollow core, wrapped with hay rope, and plastered with a sand composition, was then turned to the desired size in a lathe. It was then placed in the mold cavity, centered at the top by a sand ring placed thereon, as shown in the Brodie patent. The length of the pipe was regulated by the "stopping-off" method; that is, at the length desired the cope was turned to the size of the pattern, so that it fitted closely into the mold, and served to keep the metal from rising higher, and also centered the core. In the mold cavity below the pipe was cast. Grooves or pouring gates were formed on the face of the enlarged head of the cope, through which the metal was poured. It is also shown that at Price & Sims' works, Pittsburgh, pipe balls—that is, tubes with a closed and rounded end—were vertically cast. The mold cavity was formed in the main mold. Cores with the cope or core head and the cope all in one piece, and pouring grooves on the outer surface, not through the head, were used. Hollow caps, with trefoil closed ends, and known as "Weigand Boiler Caps," were also cast vertically at the same place and in Philadelphia. The mold had a cope seat at its upper end. The core and core head formed one piece, and were adapted to fit in the cope seat. On the edge of the core head, and under the face, was a groove, through which the metal ran. It will be noted in the Brodie device the core and sand ring are made separately. In the McNeal the "stop-off" part of the core does not taper, nor does the mold cavity, so as to form a regular core head seat. That in the pipe balls and Weigand caps the ends are closed at the lower ends. That in all these devices, except the Brodie, in case the core head did not fit closely to the core seat on the side of the mold cavity, the metal in passing through the groove or pouring gate was free to enter this space, and move the cope from its central position, and spoil the casting.

In this state of the art, and with other devices in use which we do not deem it necessary to note, Rider applied for a patent. The file wrapper shows his first specification took broad ground, and the claims made are of a like kind. The specification said:

"My invention relates to the method of casting tubular articles, such as axle boxes, iron pipes, etc., and it consists—First, in forming the mold pattern and cope so that the cope will center itself accurately on the mold; secondly, in casting by pouring through the cope; and, third, in the flasks or core box used in forming the core."

The claims then made were: First, in casting tubular articles in vertical molds centering the core by recesses formed in the opposite ends of the mold, substantially as described; second, the cope or base of the core, extending over the edge of the cavity, and having the pouring gates in said cope, so that in casting tubular articles the pouring may be done through the core; and, third, for a box for molding cores, which was afterwards allowed substantially as claimed, and which is not alleged to be infringed. It was held that the patent of Brodie, supra, and of Benson, (No. 37,670,) substantially anticipated the alleged invention, and the application was rejected. The specification was then amended by inserting instead of the part quoted the following:

"My invention relates to the manner of forming molds for casting tubular articles; and it consists—First, in forming the cope with its pouring gates as a part of the cope proper, so that several parts shall at all times hold the same relative position, thus insuring the centering of the core and reducing the number of parts in the mold liable to displacement in pouring; and, secondly, in forming the core flask," etc.

The claim allowed was:

"The cope or base of the core formed in one piece with the core, to facilitate centering the same, and having the pouring gates formed therein, so that the pouring may be done through the cope, without disturbing the relative position of the cope and mold, substantially as specified."

The claim thus allowed was much narrower than the two first made. We notice an absence of the broad claim of centering the cope in vertical molding by recesses in the opposite ends of the mold. The elements "vertical" and "tubular," which are in the rejected claim, do not appear in the allowed one. As allowed, the claims are narrowed from two to one, and this one was limited to a cope or base of the core formed in one part,—this for the purpose of facilitating the centering of the cope,—but with the added limitation of having the pouring gates therein, and this so that the pouring might be done through the cope without disturbing the relative position of the cope and mold. To save the patent it must receive a narrow construction. It is not a pioneer. To give it the broad construction contended for would be to insure its destruction. Such was the case in the patent office. The broad claims made caused its rejection, as they would here, by anticipations shown. It is contended by plaintiff's counsel that pipe balls and Weigand boiler caps do not anticipate, because they are closed at the lower end, and are not tubular. Whether the word "tubular," as found in the specification, is to be confined exclusively to hollow articles,

open at both ends, and is not used in the sense "resembling a tube,"—that is, longitudinally hollow, and in the form of a tube,—may well be questioned; but suffice it to say we find no such word in the claim allowed. We find the word "tubular" in the claim as first made, and necessarily implied also, because a core centered above and below would cast nothing but a tube. We find both claim and word withdrawn, and in the substituted specification, instead of the words, "tubular articles, such as axle boxes, iron pipes, etc.," of the first specification, the words, "such as axle boxes, iron pipes, etc.," omitted. We are of opinion that the claim is not restricted to tubular articles in the sense of being open at both ends; that it is broad enough to cover, other points being waived, the casting of pipe balls, boiler caps, and articles whose core heads are part of the cope, and therefore serve to center it. Under the broad construction of the claim contended for it was clearly anticipated by the McNeal device, for we there find vertical casting, the core head in one piece with the core, and adapted to centering it. The mere fact that the head did not taper as shown in the drawing in Rider's patent is not material, for we find no such requirement in the specification or limitation in the claim. But we are of opinion the claim should not be so construed. Rider was the first one to make a pouring gate in and through the core head of a cope made in one piece with the core head. A careful study of the file wrapper shows the invention finally narrowed down to this: reducing the number of parts liable to displacement in vertical casting joined to pouring through the core head, so as to still further reduce the liability to displacement. On this construction the claim can stand, as no other covers it in view of the prior state of the art. With these limitations, the device of the defendants does not infringe. For making wagon boxes they employ a mold having a core head formed with the core, and a print at the lower end; the cope being seated at the top and bottom of the mold. These molds are formed in clusters in one flask, and surrounding a central basin, in which the molten metal is poured, and from which leaders extend to the sides of the several core heads. These latter are slightly flattened or recessed, to form a passage for the metal to the mold cavity. For molding pipe-welding balls they use molds of substantially the same construction. The pouring gate is not formed in the cope or base of core; the pouring is not through the cope or core head; so the device is liable to the very trouble Rider sought to escape and improve upon, viz. the disturbance "of the relative position of the core and mold." This pouring at the outer edge of the core head is not an equivalent of pouring through the core head,—is not a change of form to avoid the substance of the patent. It is a different method, and one which Rider sought to improve upon; for by it one incurs the risk of the metal running between the core head and the surrounding core print. Under all the facts we are of opinion that the plaintiff is not entitled to recover, and it is therefore ordered that judgment be entered against the plaintiff, Leman P. Rider, with costs of suit.